Present:  All the Justices

KIMBERLY DAWN RAMEY,
ADMINISTRATOR, ETC.

v.  Record No. 950217    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        November 3, 1995
DELMOS BOBBITT, ET AL.

FROM THE CIRCUIT COURT OF WISE COUNTY
J. Robert Stump, Judge

In this appeal from a judgment entered in a wrongful death action, the plaintiff's decedent was struck and killed by a motor vehicle on a public street adjacent to his employer's premises while on his way to work.  The primary issue on appeal is whether the trial court correctly ruled that the Virginia Workers' Compensation Act (the Act), Code §§ 65.2-100 to -1310, provided the plaintiff's exclusive remedy against the employer and a fellow worker, who was driving the employer's truck at the time of the accident.

On August 20, 1990, Kimberly D. Ramey, Administrator of the Estate of Gene Scott Ramey (the Administrator), filed a motion for judgment against Pepsi-Cola Bottling Company, Inc., of Virginia (Pepsi), and Delmos Bobbitt.  The motion for judgment alleged that Bobbitt, while acting within the scope of his employment with Pepsi, wrongfully caused Ramey's death by driving a truck in a negligent manner, thereby distracting the attention of Margie H. Lawson, who was driving the car that actually struck Ramey.  At the time of his death, Ramey was employed by Pepsi.

Bobbitt and Pepsi filed pleas in bar, asserting that the Administrator's action was barred by the exclusivity provision of the Act, Code § 65.2-307.  They also asserted that the action was

barred on the grounds of accord and satisfaction, as evidenced by a release dated July 12, 1989, which was executed in connection with a compromise settlement of the Administrator's wrongful death action against Lawson in Dickenson County.

The trial court received stipulated facts concerning the accident and the circumstances of Ramey's employment with Pepsi. These facts show that Pepsi, which is in the business of bottling, selling, and distributing soft drinks, operates a manufacturing plant located on Park Avenue in the City of Norton. At the time of the accident, Pepsi did not provide a parking lot for its employees. Employees generally parked on public streets near the plant, including Park Avenue, 12th Street, and Virginia Avenue. Although the primary entrance to the Pepsi plant is located off of Park Avenue, there are also other entrances.

Ramey was a route salesman for Pepsi and was paid on a commission basis. Ramey was required to check in at the Pepsi plant each morning before beginning his daily route to pick up his loaded delivery truck and a box of tickets. However, he was not required to report to work at a particular time. The accident occurred between 8:00 a.m. and 9:00 a.m., within the time period when Ramey normally reported to work.

After parking his vehicle on Virginia Avenue, Ramey walked down 12th Street and over to Park Avenue, which is adjacent to the Pepsi plant. While attempting to cross Park Avenue, Ramey was struck by Lawson's vehicle as Bobbitt was in the process of

"backing" a tractor-trailer truck into the Pepsi plant. Bobbitt was acting within the scope of his employment with Pepsi at the time of the accident.

When the accident occurred, Ramey was wearing a Pepsi-Cola uniform shirt, which Pepsi employees are required to wear while they are on the job. Pepsi's route sales personnel customarily dress in the uniform shirts at home and wear them when traveling to and from work, because Pepsi does not provide lockers or changing rooms for these employees.

At the time of the accident, Ramey had in his possession a check from a customer made payable to Pepsi-Cola Bottling Company. Route sales personnel generally deposit such checks at the plant before beginning their daily routes.

The trial court denied the defendants' plea of accord and satisfaction. However, the court sustained the defendants' plea that the action was barred by the exclusivity provision of the Act and entered an order dismissing the case. The Administrator appeals the trial court's dismissal of her case, and the defendants assign cross-error to the trial court's denial of their plea of accord and satisfaction.

On appeal, the Administrator argues that the trial court erred in ruling that her action was barred by the Act, because Ramey was not killed while performing an act arising out of or in the course of his employment. In support of her position, the Administrator cites the general rule that an employee going to or

from the place where his or her work is to be performed is not engaged in any service growing out of and incidental to the employment. Barnes v. Stokes, 233 Va. 249, 251, 355 S.E.2d 330, 331 (1987).

In response, the defendants contend that Ramey was "at work" when the accident occurred, because employment includes not only the actual performance of the work but also "a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done." Brown v. Reed, 209 Va. 562, 565, 165 S.E.2d 394, 397 (1969) (quoting Bountiful Brick Co. v. Giles, 276 U.S. 154, 158 (1928)). Therefore, the defendants argue, Park Avenue was in practical effect part of the employer's premises for purposes of coverage under the Act, because it was a hazard that Pepsi employees had to encounter in order to enter the Pepsi plant. We disagree with the defendants.

The central question for our determination is whether Ramey's death by accident, in the language of the Act, was one "arising out of and in the course of the employment." Code § 65.2-300. If Ramey's accident falls within this definition, the Administrator's exclusive remedy is under the Act. Code § 65.2-307.

Generally, an employee going to or from his or her place of employment is not performing a service arising out of and incidental to the employment. Barnes v. Stokes, 233 Va. at 251, 355 S.E.2d at 331; GATX Tank Erection Co. v. Gnewuch, 221 Va.

600, 603-04, 272 S.E.2d 200, 203 (1980); <u>Kent v. Virginia-Carolina Chem. Co.</u>, 143 Va. 62, 66, 129 S.E. 330, 331-32 (1925). This general rule is commonly referred to as the "going to and from work" rule. The Administrator and the defendants agree that none of the three exceptions to this general rule is applicable here.[1]

We hold that the present case falls within the general rule stated above. Unlike the employees in <u>Barnes</u> and <u>Painter v. Simmons</u>, 238 Va. 196, 380 S.E.2d 663 (1989), cases cited by the defendants, Ramey was not killed in an area which was, in practical effect, a part of the employer's premises.

In <u>Barnes</u>, the employee was injured on a privately owned parking lot located next to his place of employment. The employer did not own or maintain the lot, but was provided

---

[1]The three exceptions to the "going to and from work" rule are: (1) when the means of transportation is provided by the employer or the time consumed is paid for or included in the employee's wages; (2) when the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer; and (3) when the employee on his or her way to or from work is still charged with some duty or task in connection with the employment. <u>Kent v. Virginia-Carolina Chem. Co.</u>, 143 Va. 62, 66, 129 S.E. 330, 332 (1925).

certain parking spaces in the lot as part of its lease of a portion of the adjacent building in which it conducted its business. The employer was "specifically requested" to require its employees to park their vehicles in the designated area. The accident occurred in the area of the parking lot allocated to the employer. Based on these facts, we held that the situs of the injury "was on premises of another that were in such proximity and relation to the space leased by the employer as to be in practical effect the employer's premises." 233 Va. at 252, 355 S.E.2d at 332.

In Painter, the employee was injured on a private road which provided access to his place of employment, as well as to other businesses. At the time of the accident, he had checked in for work and was walking on the road from the location where he had checked in to another of his employer's facilities located on that same road. We held that the accident fell within the provisions of the Act because it occurred at a place and time where the employer expected the employee to be for employment purposes. 238 Va. at 199, 380 S.E.2d at 665.

The fact that Ramey was killed on a public street places the present case beyond the scope of Barnes and Painter. The public street was not in such relation to Pepsi's plant that it was in practical effect part of Pepsi's premises. Nor was it a place where Pepsi expected Ramey to be for employment purposes.

We disagree with the defendants' argument that the "going to

and from work" rule does not apply to Ramey because he did not have fixed hours of work or a fixed place of employment. Ramey was required to report to the Pepsi plant each morning to start his work day. As stated above, the evidence showed that he customarily reported to work at the Pepsi plant between 8:00 a.m. and 9:00 a.m., and that the accident occurred within this time period. These facts are sufficient to place his actions at the time of the accident within the "going to and from work" rule.

We further disagree that our decision in Grand Union v. Bynum, 226 Va. 140, 307 S.E.2d 456 (1983), requires a different result. There, we held only that the employee did not die in the course of his employment because he was killed after leaving work, visiting one friend, and returning to his car to drive to the house of another friend. The fact that the employee had fixed hours of employment was relevant only in determining when he had completed his work for the day.

We next consider the defendants' assignment of cross-error that the trial court erred in denying their plea of accord and satisfaction. The defendants argue that, under the terms of the release executed on July 12, 1989, the Administrator and Ramey's other statutory beneficiaries released them, as well as Margie Lawson and Nationwide Mutual Insurance Company. Specifically, the defendants point to the language of the release in which the

Administrator and the other statutory beneficiaries agreed to
    release and discharge Nationwide Mutual Insurance
    Company and Margie Lawson[,] his or their successors
    and assigns, and all persons, firms or corporations who

are or might be liable, from all claims of any kind or character which we have or might have against him or them, and especially because of all damages, losses or injuries to persons or property, or both, whether developed or undeveloped or known or unknown, resulting or to result from [this] accident.

On July 12, 1989, pursuant to Code § 8.01-55, the Circuit Court of Dickenson County approved a compromise settlement of the Administrator's action against Lawson. The court's order provided that

said compromise settlement be, and the same hereby is approved, and it is further ORDERED and ADJUDGED that Margie Lawson be, and she hereby is, released and discharged of and from any and all liability and claims which might be asserted against her by Kimberly D. Ramey, [Administrator] of the Estate of Gene Scott Ramey, deceased, . . . on account of the fatal injury to Gene Scott Ramey resulting from the accident set out in this proceeding.

This order also stated that "this case is continued."

On April 8, 1991, on motion of the Administrator, the Dickenson County Circuit Court entered an order amending its July 12, 1989 order "to provide that Margie Lawson and her insurer, Nationwide Mutual Insurance, and only those persons, are released by the settlement approved by [this] Court in that foregoing Order."

The defendants contend that the terms of the July 12, 1989, release preclude the Administrator's action here. They assert that, once the Dickenson County Circuit Court entered the July 12, 1989 order, the release became a binding contract. The defendants further contend that the July 12, 1989 order was a final order and that, therefore, the April 8, 1991 order was void

under Rule 1:1.

In response, the Administrator argues that the July 12, 1989 order was not final because the Dickenson County Circuit Court continued the case generally and did not limit the matters over which it was retaining jurisdiction. Thus, the Administrator contends that both orders are valid, and that their terms plainly rebut the defendants' plea of accord and satisfaction.

In resolving this issue of first impression, we initially observe that Code § 8.01-55 requires, before any compromise of a wrongful death claim or action will be allowed, that the compromise must have "the approval of the court wherein any such action has been brought, or if none has been brought, with the consent of any circuit court." In addition, Code § 8.01-35.1(C) makes releases and covenants not to sue in respect to tort liability "subject to the provisions of Code § 8.01-55." Therefore, when a circuit court approves a compromise settlement under Code § 8.01-55, the terms of the release on which it is based likewise are subject to the court's approval.

Those portions of a release that are not made part of a wrongful death compromise settlement approved by a circuit court are not binding on the parties to the release. A contrary interpretation of Code §§ 8.01-35.1(C) and -55 would allow parties to a release effectively to circumvent the requirement of court approval by excluding any release provision from the compromise settlement.

In the present case, the July 12, 1989 order approved only the release of Margie Lawson from liability for the accident. It did not order the release of any other person or entity from liability for the fatal injury to Ramey. Moreover, since the Dickenson County Circuit Court continued the case in that order, we look to the terms of its final order of April 8, 1991, which specify that only Lawson and Nationwide were released by the settlement approved by the court on July 12, 1989. Thus, we hold that the trial court did not err in denying the defendants' plea of accord and satisfaction.[2]

For these reasons, we will affirm in part, and reverse in part, the trial court's judgment and remand this case for further proceedings consistent with the principles expressed in this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

---

[2]We also note that <u>Cauthorn v. British Leyland, U.K., Ltd.</u>, 233 Va. 202, 355 S.E.2d 306 (1987), cited by defendant Pepsi, is inapplicable to this analysis because the release at issue in that case was executed in 1978, prior to the enactment of Code § 8.01–35.1.